MARSHALL NURSING HOMES, INC., MARSHALL NURSING HOME
No. 4, APPELLANT, *v.* AGGREY, DIRECTOR, OHIO DEPT. OF
PUBLIC WELFARE ET AL., APPELLEES

[Cite as Marshall Nursing Homes, Inc., v. Aggrey
(1976), 50 Ohio App. 2d 15.]

(No. 76AP-604—Decided September 30, 1976.)

*Messrs. Thompson, Swope, Burns & Biswas,* for appellant.

*Mr. George C. Smith,* prosecuting attorney, *Mr. James M. Dunphy, Mr. Dennis Pines, Mr. William J. Brown,* attorney general, *Mr. Donald P. Muenz* and *Ms. Gladys F. Burkhart,* for appellees.

WHITESIDE, J. Plaintiff appeals from a judgment of the Franklin County Court of Common Pleas dismissing its complaint for failure to state a claim upon which the requested relief of permanent injunction could be granted. In support of its appeal, plaintiff has raised four assignments of error, as follows:

"1. The trial court erred in denying the prayer for a preliminary injunction and in dismissing the complaint because denial of renewal and decertification by the defendants without prior hearing denies plaintiff a valuable right without due process guaranteed under the Fifth and Fourteenth Amendments to the Constitution of the United States.

"2. The trial court erred in denying the preliminary injunction and in dismissing the complaint for the reason that the regulations of the Department of Health, Education and Welfare, as utilized by the defendant, Ohio Department of Health, providing for granting of waivers are unconstitutional in that they set no standard nor provide right to hearing before being granted or denied by the agency thereby denying defendant due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States.

"3. The trial court erred in dismissing the complaint and denying the preliminary injunction because enforcement of federal standards against plaintiff which are substantially more stringent than existing state standards result in the Federal Government's invasion of state reserve powers in contravention of the Tenth Amendment to the Constitution of the United States.

"4 The trial court erred in denying the preliminary injunction and dismissing the complaint since the application of federal standards to homes who receive federal funds through provider agreements executed under Section 5101.-51, Revised Code, while not applying such regulations to persons who spend social security checks, S. S. I. benefits and other monies stemming from the federal government are in constravention of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States."

Plaintiff operates a nursing home licensed by the state of Ohio to care for 27 patients. For some years, plaintiff has had a contract, referred to as a provider agreement, with the Director of Public Welfare and the Ohio Department of Public Welfare for direct payment to plaintiff for care of welfare recipients in plaintff's nursing home, using funds partially provided by the Department of Health, Education, and Welfare under the federal Social Security Act. That act, and the regulations thereunder, require the meeting of certain standards with respect to a provider agreement, classifying nursing homes somewhat differently than the Ohio law and providing for three classes of medicaid nursing home pro-

vider agreements: skilled care, intermediate care, and rest home care. In order to qualify for a provider agreement, a nursing home must obtain a statement of compliance with the prescribed regulations from the state health department. The requirements of the regulations for certification vary between the three levels of care with those for skilled care being most restrictive.

By letter dated April 20, 1976, plaintiff was notified by the Director of Public Welfare that plaintiff's provider agreement, which was about to expire, would not be renewed. Plaintiff was not afforded a prior hearing with respect to nonrenewal of the provider agreement. Such action, however, in no way affected plaintiff's Ohio license to operate as a nursing home. Plaintiff presumably remains free to do so, but does not have a provider agreement whereby the State Department of Public Welfare, using at least partially federal funds, will pay plaintiff for the care of its patients. Plaintiff would be required to look to other sources for payment for care of its patients or secure and accept only patients able to pay for their own care.

There is little to distinguish this case from two prior decisions of this court; namely, *Shady Acres Nursing Home, Inc.,* v. *Canary* (1973), 39 Ohio App. 2d 47, and the unreported decision rendered in *Convalescent Care, Inc.,* v. *Bates,* Franklin County No. 74AP 585, decided May 15, 1975 (1975 Decisions, page 1096). In both cases, this court clearly and unequivocally held that no prior due process evidentiary hearing was required before the Ohio Department of Public Welfare could refuse to renew a provider agreement for alleged noncompliance with the applicable federal standards, known as the Life Safety Code.

Plaintiff attempts to distinguish the prior decisions of this court upon the basis that it had "an expectancy of renewal" arising from the prior relationship between the parties. The issue was considered and rejected by the majority of this court in *Convalescent Care.* In fact, the dissenting opinion in that case was predicated at least in part upon that proposition.

However, before there can be expectancy of renewal, there must be some basis for reliance upon such "expect-

ancy." The two prior decisions of this court, both holding that there is no right to the renewal of a provider agreement, should have been sufficient in and of themselves to alert plaintiff that it could not rely upon a renewal of its agreement, which expired in May 1976.

In any event, we find no basis for distinguishing this case from our two prior decisions. Accordingly, the first assignment of error is not well taken.

Likewise, the second assignment of error is not well taken. By this assignment of error, plaintiff contends that the regulations of the United States Department of Health, Education, and Welfare for the granting of waivers are unconstitutional, since they provide no standard nor provide any right to a hearing. Assuming that plaintiff is correct and that the provision for waivers is unconstitutional, then there would be no valid regulation providing for a waiver, regardless of the circumstances. Assuming the validity of the regulations themselves, the absence of a provision for waiver does not in any way benefit plaintiff.

By the third assignment of error, plaintiff contends that the federal regulations themselves are unconstitutional as an invasion of state reserve powers in violation of the Tenth Amendment to the United States Constitution. Neither by this assignment of error nor by the second assignment of error does plaintiff contend that the standards themselves are unreasonable. There is no merit to the third assignment of error. The federal standards do not attempt to regulate whether or not nursing homes shall be permitted to operate in the state of Ohio and to care for patients in the state of Ohio. Rather, the federal regulations merely prescribe the circumstances under which a nursing home will be entitled to payment of federal monies. If no federal funds are involved, the federal standards have no application. Obviously, the federal government has some interest with respect to whom and under what circumstances federal funds shall be expended.

Likewise, there is no merit to the fourth assignment of error. Quite obviously, there is a different class existing between those who receive federal funds through provider agreements and the expenditures made by persons who hap-

pen to derive their personal funds from the federal government by way of a social security check or otherwise. The classification which plaintiff attempts to create does not exist and is in and of itself unreasonable.

Unfortunately, the state and federal governments do not classify nursing homes in the same manner and do not apply exactly the same regulations. If the Ohio statutes and regulations and the federal statutes and regulations were identical as to definitions and licensing, obviously, no problem would exist as to a hearing or otherwise because a home licensed under Ohio law necessarily would have been found to have met the Ohio standards, which then would be identical to the federal standards, and R. C. 3721.07(G) specifically provides for an appeal from a denial of an Ohio license. However, it appears that plaintiff remains licensed under Ohio law as a nursing home entitled to render "skilled nursing care," as defined under Ohio law[a] but has been found not to meet the standards to render skilled nursing care as defined by federal law, and, therefore, its provider agreement with the Ohio Department of Welfare, as provided for under federal law, has not been renewed.

The basic question that has been presented by all of the cases concerning provider agreements is whether or not the nursing home involved is entitled to continue to receive

---

[a]Although not at all clear why it appears in the record in this case, there appears on the transcript of docket entries as being filed in the trial court in this case on April 28, 1976, a record of proceedings, which record is included among the original papers of the trial court as part of the record on appeal. Such transcript, or record, indicates that the Department of Health conducted a hearing through a referee in May 1975, upon the question of whether to revoke plaintiff's license to operate a nursing home under Ohio law. This apparently culminated in an order by the Director of Health, entered on March 31, 1976, revoking plaintiff's license to operate a nursing home at 1314 Bryden Road. An appeal was apparently taken to the Court of Common Pleas, and an order of suspension of that order was entered on April 5, 1976, in case No. 76CV-04-1339. It would appear that this record of proceedings would be more properly a part of the original papers in that case, rather than the original papers in this case, which was case No. 76CV-05-1845 in the trial court. In any event, there is no indication in the record of this case as to the final disposition of trial court case No. 76CV-04-1339.

payments derived from federal funds for welfare purposes. Plaintiff's basic complaint is that it cannot continue to operate and exist unless it continues to receive federal funds through a provider agreement with the Ohio Department of Public Welfare. In other words, plaintiff complains that it must have public funds in order for it to exist. If plaintiff expects to receive federal funds, it must also expect to comply with reasonable regulations governing the circumstances under which such public funds will be paid; namely, to provide the proper type of facility and care for the patients who are the real ones in need of public assistance and for whose benefit the public funds should be expended. Plaintiff does not contend that there are no other facilities which can meet the needs of the patients involved. Rather, plaintiff's complaint is that it will not receive that money.

Plaintiff is entitled to challenge and to litigate the reasonableness of the federal standards with respect to nursing homes. However, in this action, plaintiff only incidentally challenges such regulations, and it appears that plaintiff's primary contention is that it is entitled to a renewal and continuation of its expired provider agreement until such time as it is afforded a full and complete hearing and determination both as to the reasonableness of such regulations and whether plaintiff has failed to comply therewith. Since we have determined this issue adversely to plaintiff on two prior occasions, and plaintiff has presented no new or additional reasons sufficient to compel a different conclusion, the same result must ensue in this case.

For the foregoing reasons, all four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

REILLY, J., concurs.
McCORMAC, J., dissents.

McCORMAC, J., dissenting. I dissent for the reasons set forth in my dissenting opinion in the unreported case of *Convalescent Care, Inc.*, v. *Bates*, Franklin County No. 74AP-585, rendered May 15, 1975 (1975 Decisions, page 1096).