Annie GREEN, dba Christian Home For The Aged, Plaintiff-Appellee,

v.

John R. CASHMAN, Director, Ohio Department of Health, et al., Defendants-Appellants.

Nos. 77–3288, 77–3289.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1979.

Decided Sept. 14, 1979.

William J. Brown, Atty. Gen., William J. McDonald, Richard J. Nagle, Jr., Thomas W. Hess, Asst. Attys. Gen., Columbus, Ohio, Sarah Willis Wilcox, Galen Powers, Washington, D.C., for defendants-appellants in No–77–3288.

Richard F. Swope, Thompson, Swope, Burns & Biswas, Reynoldsburg, Ohio, for plaintiff-appellee in No. 77–3288.

James C. Cissell, U. S. Atty., Albert R. Ritcher, Asst. U. S. Atty., Columbus, Ohio, Sarah Willis Wilcox, Dept. of H.E.W., Washington, D.C., for defendants-appellants in No. 77–3289.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and CECIL, Senior Circuit Judge.

EDWARDS, Chief Judge.

This case, as briefed before this court, posed the question as to whether or not the Ohio Department of Health, which con-

tracted for Medicaid payments[1] to a nursing home operated by Annie Green may terminate said Medicaid payments on the ground that Mrs. Green's nursing home is not safe for occupancy by Medicaid recipients without a prior due process hearing. The District Judge had answered that question "No."

In 1974 plaintiff's nursing home was certified by the State of Ohio under applicable federal statutes and regulations as an "intermediate care facility," [ICF] eligible for Medicaid payments for services rendered to patients. Over the next several years a controversy arose as to whether the nursing home was in compliance with certain regulations relating to fire safety standards. The controversy involves Mrs. Green's refusal for three years to enclose a stairwell between the first floor and the second floor of said home without first being given a due process hearing on her claim that such action was not essential to the safety of the patients.[2]

█ Whatever rights plaintiff-appellee has appear to us to arise exclusively from a contract called a "Provider" agreement, a copy of which is attached as Appendix A to this opinion. The agreement between plaintiff-appellee and the State of Ohio is terminable at will on the part of either party "on a 15-day written notice," and absent such notice, was to expire at the end of a calendar year from the date of its execution on 4–30–77. We do not find in the statute authorizing Medicare and Medicaid any legislative intention to provide financial assistance to providers of care for their own benefit. Rather, the statute is designed to aid the patients and clients of such facilities. Other courts have expressed the same point of view in similar situations.

See Case v. Weinberger, 523 F.2d 602, 607 (2d Cir. 1975); Paramount Convalescent Center v. Department of Health Care Services, 15 Cal.3d ·489, 496–97, 125 Cal.Rptr. 265, 269, 542 P.2d 1, 5 (1975). This would call for vacation of the District Judge's order and remand for dismissal of the complaint.

At oral argument of this appeal, however, we were informed by counsel for the Secretary of Health, Education & Welfare of the publication of final regulations adopting specific minimal hearing requirements for state agencies in cases of termination of· ICF certifications. See 44 Fed.Reg. 9749, 9753 (1970) (to be codified in 42 CFR § 431.151 to 431.154). These regulations, which became effective during the pendency of this appeal, are apparently based upon the minimal standards of Mathews v. El-·dridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). They require that plaintiff be given notice and opportunities for written responses before termination and provide for an evidentiary hearing either before termination or within four months after termination, and judicial review thereafter.

█ While the regulations were not in existence during the lengthy controversy reflected in this record and were not available to the District Judge who heard this lawsuit, "the general rule is 'that an appellate court must apply the law in effect at the time it renders its decision.'" Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), quoting Thorpe v. Housing Authority, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).

1. The funds are provided by the United States Department of Health, Education & Welfare through its Medicaid program.

2. This sort of question has spawned a considerable amount of litigation in Ohio and elsewhere. See e. g., Shady Acres Nursing Home, Inc. v. Canary, 39 Ohio App.2d 47, 316 N.E.2d 481 (Franklin Co. 1973), motion to certify record to Supreme Court overruled (Ohio S.Ct. February 22, 1974); Marshall Nursing Homes, Inc. v. Aggrey, 50 Ohio App.2d 15, 361 N.E.2d 522 (Franklin Co. 1976), dismissed by Ohio Supreme Court on application of appellant, No. 76–1193 (Ohio S.Ct. January 26, 1977); Caton Ridge Nursing Home, Inc. v. Califano, 596 F.2d 608 (4th Cir. 1979), aff'g per curiam, 447 F.Supp. 1222 (D.Md.1978); Town Court Nursing Center, Inc. v. Beal, 586 F.2d 266 (3d Cir. 1978); Hathaway v. Mathews, 546 F.2d 227 (7th Cir. 1976); Case v. Weinberger, 523 F.2d 602 (2d Cir. 1975).

We have no doubt that the Secretary of Health, Education & Welfare can voluntarily grant the minimal hearing procedures which are set forth in the regulation previously referred to. This regulation does allow the state to take prompt action in the interest of patient safety. As noted before, the regulation was not before the District Court at the time of its decision.

The judgment of the District Court, therefore, is vacated and the case is remanded to the District Court, with instructions to remand to the appropriate state officials and to the Secretary of Health, Education and Welfare for reconsideration in the light of the new regulations. *See Citizens to Preserve Overton Park, Inc. v. Volpe, supra*, 401 U.S. at 419 n.33, 91 S.Ct. 814.

APPENDIX A

STATE OF OHIO

DEPARTMENT OF PUBLIC WELFARE

MEDICAL ASSISTANCE PROGRAM

PROVIDER AGREEMENT

As a condition of participation in the Title XIX (Medicaid) and/or Title V (Crippled Children's Services) programs of the Social Security Act, the following institution, group or individual providing services:

Christian Home for the Aged      #023782
NAME OF PROVIDER      VENDOR NUMBER

hereinafter called the Provider, agrees as follows:      Franklin

1. To keep such records as are necessary fully to disclose the extent of the service provided to individuals receiving assistance under the State Plan.

2. To furnish the Ohio Department of Public Welfare with such information, regarding any payments claimed by such Provider for providing services under the State Plan, as the Ohio Department of Public Welfare may from time to time request.

This agreement may be terminated by the Provider, or the Ohio Department of Public Welfare, on a fifteen (15) day written notice.

The terms of this agreement shall be for a period of 12 months, effective 5–1–76, and will expire on 4–30–77.

------------------------------------------------
Signature of Provider or Authorized Agent      DATE

------------------------------------------
TITLE
1454 Eastwood Ave., Columbus, Ohio 43203

------------------------------------------------
ADDRESS (Street, City, State, Zip Code)
FOR STATE AGENCY

--------------------
--------------------

------------------------------------------------
SIGNATURE OF AUTHORIZED AGENT      DATE

-------------------------------
TITLE