GERIATRICS, INC., d/b/a Eventide of
Lakewood Nursing Home,
Plaintiff/Appellee,

Ruby Arnold et al.,
Plaintiffs-Intervenors/Appellees,

v.

Patricia HARRIS et al.,
Defendants/Appellants,

Colorado State Department of Health et
al., Defendants-Cross
Claimants/Appellees.

No. 79–2317.

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 2, 1980.
Decided Jan. 26, 1981.

Joseph F. Dolan, U. S. Atty., William C. Danks, Asst. U. S. Atty., Denver, Colo., Ronald S. Luedemann, Regional Atty., and Richard K. Waterman, Asst. Regional Atty., Dept. of Health, Education and Human Services, Denver, Colo., of counsel, for defendants-appellants.

Frederick Miles and Richard G. McManus, Jr., of Miles & McManus, Denver, Colo., for plaintiff-appellee.

Richard N. Stuckey, of Keene, Munsinger & Stuckey, Denver, Colo., for plaintiffs-intervenors/appellees.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., and Maurice G. Knaizer, Asst. Atty. Gen., Human Resources Section, Denver, Colo., for defendants-cross claimants/appellees.

Before SETH, Chief Judge, and LEWIS and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

After examining the briefs and the appellate record, this three-judge panel has de-

termined that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from a preliminary injunction which enjoined Secretary Harris of HEW and the Colorado State Department of Health from terminating Medicaid funding of plaintiff Geriatrics' Eventide of Lakewood Nursing Home prior to a hearing to ascertain whether the Home is in compliance with federal and state regulations.

HEW appeals and contends that an evidentiary hearing is not required before it terminates its Medicaid funding of a nursing home which has failed to meet the basic standards.

Eventide of Lakewood Nursing Home has for some time been licensed by the state as a skilled nursing facility and has therefore been eligible to participate in the Medicare and Medicaid programs. The Home has approximately 146 residents, of whom 116 rely on Medicaid payments. These payments are made pursuant to provider agreements between the Home and the State of Colorado, as required under the federal Social Security Act.

Eventide's operating license and its Medicare and Medicaid provider agreements were all due to expire in August 1979. The State Department of Health, as the agency responsible for the inspection of participating facilities for compliance with regulations pertaining to health care standards, conducted a complete survey of Eventide in May 1979. The purpose was to ascertain whether Eventide's license and provider agreements should be renewed. The inspection revealed that Eventide was seriously deficient in many areas of operation and the state concluded that Eventide did not comply with federal and state regulations regarding nursing services and infection control. 42 C.F.R. §§ 405.1124, 405.-1135 (1979). The state furnished Eventide with a thirty-seven page deficiency list detailing the particulars. As required, Eventide returned the list with its proposed plan of corrections for review.

By letter dated July 27, the state notified Eventide of its intention not to renew the Home's license and certification required for participation in the Medicaid program. This action was based on recurrent violations of federal and state operating standards as revealed by several surveys conducted over the past few years and by the inspection conducted the previous May. The letter also informed Eventide that the state was recommending that the Home's Medicaid provider agreement and Medicare certificate not be renewed. The letter also set a hearing on the matter for August 27, 1979. HEW followed the state's recommendation, notified Eventide, and informed it of its right to an administrative reconsideration of this action. 42 C.F.R. § 405.1510 (1979) requires the appropriate state agency to take the same action as HEW regarding its provider agreements so the state informed Eventide that its Medicaid provider agreement would expire by its terms on August 31, 1979 without renewal.

Eventide appealed the state agencies' actions by letters dated August 7 and 21 and requested that the denials be stayed pending a hearing. At the August 27 hearing, a state hearing officer granted the motion as to the license and Medicaid certification, but denied the request as to the Medicaid provider agreement. Eventide requested reconsideration of the HEW nonrenewal on September 25, within the sixty days allowed, 42 C.F.R. § 405.1511(b) (1979), but this was almost a month after the expiration of the HEW agreement. Prior to this request Eventide had started this suit seeking injunctive relief, declaratory judgment, and judicial review of the agencies' actions.

The patients at Eventide contended that their interests would be adversely affected by a cessation of benefits to the Home so that they too were entitled to a hearing before funding is terminated. The district court appointed counsel to represent the residents at the Home and permitted them to intervene.

Regulations require that after a nursing home has been decertified the home is not to admit Medicare or Medicaid patients, and

the funded residents are to be relocated. Funding stops within thirty days following the expiration of the home's provider agreements. 42 C.F.R. § 441.11(a) (1979). The court heard evidence that relocation of patients would cause trauma; that the cessation of funding would adversely affect the Home's financial condition; and that the Home had by then corrected several deficiencies. The trial court ordered the agencies not to terminate funding until a hearing to establish the status of the Home's compliance with federal regulations was conducted. He also allowed the Home to continue to admit Medicare and Medicaid patients.

■ An initial issue is whether the residents of Eventide are entitled to a hearing before the government may suspend the nursing home they occupy from participation in the Medicaid program. The case of *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), is dispositive of this issue. The Court there held that no such constitutional right exists. The Court noted that the patients receive benefits from the government in the form of payment for certain medical services. These cannot be withdrawn without notice and hearing, but a decision to decertify a nursing home is not an action depriving the residents of their direct benefits. The indirect adverse effect does not create a constitutional right.

Eventide asserts that it had an expectation of continued participation in the Medicaid program and this was a "property interest" to be protected under due process. Also, that it had more than a unilateral claim or mere expectancy. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548.

■ A protectable property interest must be an interest secured by statute or legal rule or through a mutually explicit understanding. *Leis v. Flynt*, 439 U.S. 438, 441–42, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717; *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570; *Chavez v. City of Santa Fe Housing Authority*, 606 F.2d 282, 284 (10th Cir.); *Coleman v. Darden*, 595 F.2d 533 (10th Cir.).

The regulations require the Secretary to inform a nursing facility that its agreement will not be renewed and to state the reasons for nonrenewal, 42 C.F.R. § 405.604(c)(3) (1979) (to be recodified at 42 C.F.R. § 489.-16(b)(1)), and further provide for the opportunity for full administrative review. 42 C.F.R. §§ 405.1501–405.1595 (1979). *See also* Colorado Department of Social Services Regulations §§ A–4900.01 and A–4900.01–5. These provisions taken alone may appear to create an expectation between government and facility of renewal. However, when the entire regulatory scheme is considered no basis appears for such an expectation.

Federal law limits provider agreements to one year. 42 U.S.C. § 1395cc(a)(1); 42 C.F.R. § 442.15(a). The state must assure the HEW that the home is licensed, must certify that it meets the standards as set forth in the federal regulations, 42 C.F.R. §§ 442.101 and 442.201 (1979), and inspect the facility at least once a year to assure compliance with the regulations. 42 C.F.R. § 456.606 (1979). The manifest intent of limiting the term of a provider agreement to one year is to assure that an automatic termination occurs and a new agreement may be entered into if the facility is in compliance. This limitation provides an incentive to a nursing home to consistently render adequate care to its Medicaid patients. The regulations thus impose upon a facility the burden of demonstrating annually that it complies with the appropriate standards.

■ The mutual understanding extant here was that Eventide's provider agreement was to expire August 31, 1979, and it contained no provision as to renewal. The Home understood that a new one would not issue unless it could affirmatively show it was qualified. Thus the facts are not distinguishable from *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, wherein it was held that an untenured teacher employed under a contract without a specific expiration date had a mere unilateral hope of renewal. Eventide thus had at

most a unilateral hope that new provider agreements would be executed, but such unilateral hope cannot constitute a protected "property" interest as to require a pre-termination hearing. *Paramount Convalescent Center, Inc. v. Department of Health Care Services*, 15 Cal.3d 489, 542 P.2d 1, 125 Cal.Rptr. 265, *cert. denied*, 425 U.S. 992, 96 S.Ct. 2204, 48 L.Ed.2d 817; *Marshall Nursing Homes, Inc. v. Aggrey*, 50 Ohio App.2d 15, 361 N.E.2d 522; *State Department of Social Services v. Rodvik*, 264 N.W.2d 898 (S.D.). The administrative review of an adverse decision by HEW is designed to protect a home's interest. The regulations allow the home the opportunity to demonstrate compliance. *Town Court Nursing Center, Inc. v. Beal*, 586 F.2d 266 (3d Cir.). There is, however, no statutory or constitutional requirement that a hearing be conducted prior to the cessation of benefits.

Eventide is not the intended beneficiary of the Medicaid program. Instead, the purpose underlying the funding program is to extend financial benefits to the patients eligible to receive their medical care at government expense. 42 U.S.C. § 1395a. Eventide argues also that termination of benefits would force the Home to close and that it therefore has a significant financial interest to retain its certification. The Home's financial need for government assisted patients is incidental to the purpose and design of the program. Eventide's operating license has not been rescinded and it may still operate as a nursing home and render care to private-pay patients. The unfortunate reality that it will probably encounter difficulty operating at capacity is not of constitutional significance. *See Town Court Nursing Center, Inc. v. Beal*, 586 F.2d 266 (3d Cir.); *Case v. Weinberger*, 523 F.2d 602, 607 (2d Cir.).

The Third Circuit panel in *Town Court Nursing Center, Inc. v. Beal, supra*, held that no pre-termination hearing was required for the home as such. It so held after a detailed analysis of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, which is persuasive. Thus the court in *Town Court* concluded in the opinion by the panel:

"The opinion of the Supreme Court in *Mathews v. Eldridge, supra*, makes it apparent that due process does not require that Town Court be given an evidentiary hearing and judicial review prior to the effective date of the Secretary's initial decision to terminate provider status under Medicare."

*Town Court*, 586 F.2d 280 (3d Cir.) (en banc), went to the Supreme Court from the en banc consideration by the Third Circuit as to the residents only as the home did not seek a review of the decision by the Court of Appeals panel. *Klein v. Mathews*, 430 F.Supp. 1005 (D.N.J.), remanded at 586 F.2d 250 (3d Cir.), also concerned only the residents' rights. *Klein* was discussed at 586 F.2d 280.

In *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir.), there was no process or proceedings afforded the nursing home before termination and reasons for termination were not made known to the provider. The state in *Hathaway* was of the view that the home had complied with the regulations. These factors made the case distinguishable.

In *Case v. Weinberger*, 523 F.2d 602 (2d Cir.), the court decided that a pre-termination hearing for a provider was not required and gave particular emphasis to the fact that the nursing home is not the intended beneficiary of the Medicare program. It indicated that the fact that the particular home might not survive without Medicare patients was not a primary consideration and "the facility's need is incidental." Also the Second Circuit stated that the benefits to the home arose from an ordinary contractual business arrangement with the government.

We must hold that a pre-termination hearing is not required as to the plaintiff Home herein and under *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), the residents of Eventide of Lakewood Nursing Home are not entitled to a pre-termination hearing.

The order and judgment of the District Court are reversed.